UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| **DEWANNA LOUVIERE** | * | **CIVIL ACTION NO. 11-0590** |
| **VERSUS** | * | **JUDGE MELANÇON** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Dewanna Louviere, born March 14, 1973, filed an application for supplemental security income ("SSI") payments on April 15, 2008, alleging disability as of September 12, 1981, due to paranoid schizophrenia and depression.[1]

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

---

[1] SSI is payable only from the date of application. 20 C.F.R. § 416.335.

In fulfillment of Fed.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from OMH/MHR dated July 27-28, 2006**.  Claimant presented with paranoid schizophrenia, depression, and drug addiction.  (Tr. 157).  She had a history of alcohol and drug abuse.  (Tr. 159).  She claimed to hear voices and see shadows.  She had attempted suicide in the past, and had been hospitalized three times since 1990 for failure to take medication and substance abuse.  (Tr. 173).

At that time, claimant was in treatment at Tyler Mental Health Center, and attending a day program sponsored by the Lafayette Parish Sheriff's Office for temporary counseling services and appropriate community services in lieu of incarceration for a parole violation.  (Tr. 174).  She was referred to OMH/MHR to coordinate mental health and substance abuse services.  (Tr. 180).

**(2) Records from Dr. Joseph Henry Tyler Mental Health Center dated August 18, 2005 to April 9, 2007**.  Claimant was admitted from August 18-31, 2005, for schizoaffective disorder, polysubstance dependence, and non-compliance with treatment.  (Tr. 189).  Her Global Assessment of Functioning

("GAF") score was 10 on admission, 40 for the prior year, and 55 on discharge. She was prescribed Wellbutrin, Trazadone, and Geodon. (Tr. 190).

On April 9, 2007, claimant's GAF score was 89. (Tr. 186).

**(3) Consultative Examination by Eric R. Cerwonka, Psy.D., dated April 16, 2008**. Dr. Cerwonka opined that the information provided by claimant was of minimal reliability because she was "basically uncooperative." (Tr. 195). She reported that she first began to experience mental health problems in 1994, and was subsequently hospitalized twice. (Tr. 196). She said that she received outpatient psychiatric care before serving imprisonment for possession of cocaine, and was prescribed psychotropic medications while in prison from 2005 until 2008. Her medications included Wellbutrin, Elavil, and Geodon.

During the interview, claimant was minimally cooperative, refused to answer many questions, and was often vague and evasive. Eye contact and rapport were poor. Her mood was irritable and euthymic, and her affect was mood congruent.

Claimant stated that she slept well with medication, and that her appetite was good. She reported auditory hallucinations in which "voices" told her to do "bad stuff." In general, however, her thinking was organized and goal-directed

with no evidence of loose associations, tangential, or circumstantial thought processes.

Claimant was alert and oriented to person, place, time, and situation. Her comprehension was fairly good. Her remote memory was intact, and demonstrated recent memory was fair. Her attention and concentration skills were fairly good. (Tr. 197).

Pace and persistence were good. Claimant's estimated intellectual functioning appeared to be in the low average range. Her ability to understand the objective reality of a situation, assess a situation correctly, and act appropriately was poor. Insight and judgment appeared to be poor.

Dr. Cerwonka's assessment was psychotic disorder, NOS and antisocial personality disorder. He stated that the effect of these disorders was unknown due to claimant's refusal to cooperate; however, she exhibited good and consistent skills while trying to be uncooperative. She did not seem to have any intellectual limitations or cognitive deficits that would be expected to prevent her from working.

Dr. Cerwonka opined that based on the skills demonstrated, it seemed likely that claimant was able to understand, retain, and follow instructions, and was able to sustain enough concentration and attention to perform both simple and more

complex tasks. He further stated that based on her early release from prison, claimant most likely was able to relate well enough to others on a one-to-one basis when motivated to do so. He thought that there did not seem to be any cognitive or behavioral problems that would prevent her from regular, full-time work.

**(4) Mental Residual Functional Capacity ("RFC") Assessment dated July 31, 2008**. Lawrence Guidry, Ph.D., found that claimant was moderately limited as to her ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions; accept instructions and respond appropriately to criticism from supervisors, and set realistic goals or make plans independently of others. (Tr. 213-14).

**(5) Psychiatric Review Technique dated July 31, 2008**. Dr. Lawrence Guidry assessed claimant for schizophrenic, paranoid, and other psychotic disorders and personality disorders. (Tr. 217). He determined that she had mild restriction of activities of daily living, and moderate difficulties in maintaining social functioning and maintaining concentration, persistence, or pace. (Tr. 227). She had no episodes of decompensation.

**(6) Records from Dr. Joseph Henry Tyler Mental Health Center dated December 23, 2008 to April 24, 2009**. On December 23, 2008, claimant stated that she had been off of her medications since being out of jail, and reported hearing voices, seeing shadows, and being afraid that people were out to hurt her. (Tr. 242). She also complained of depression, trouble sleeping and having aggressive feelings.

On January 27, 2009, claimant had improved on her medications. (Tr. 240). Her sleep was much better on March 4, 2009. (Tr. 236). On March 10, 2009, claimant was fairly stable on her current medications. (Tr. 235).

**(7) Report from Dr. Eric Cerwonka dated February 25, 2009**. Claimant reported that she hoped to participate in an 18-month paramedic program. (Tr. 249). Dr. Cerwonka opined that the information she provided was of adequate reliability, with no evidence of exaggeration or malingering. (Tr. 250). She stated that she began working in August, 2008, as a certified nurse's assistant (CNA) four days a week for four hours each day. She was taking Geodon, Elavil, and Wellbutrin.

On examination, claimant's mood appeared to be euthymic, and her affect was mood congruent. Eye contact and rapport were fair. She reported that she regularly experienced auditory hallucinations and delusions such as paranoia and

thought broadcasting. (Tr. 251). In general, her thinking was organized and goal-directed with no evidence of loose associations, tangential, or circumstantial thought processes.

Claimant was alert and oriented to person, place, time, and situation. Comprehension was fairly good. Her fund of general knowledge seemed good.

Claimant's remote memory was intact, and demonstrated recent memory was good. Her attention and concentration skills, and pace and persistence, were fairly good. Her ability to understand the objective reality of a situation, assess a situation correctly, and act appropriately seemed fair. Insight and judgment appeared to be fair.

Claimant was cooperative with testing and appeared to put forth adequate effort. The Wechsler Adult Intelligence Scale, Third Edition revealed a verbal IQ score of 73, performance of 76, and full scale of 72. Dr. Cerwonka opined that these scores underestimated her true intellectual functioning, and estimated that her true FSIQ was likely to be in the low average range.

Additionally, claimant was administered the MMPI-W, to which she responded in an extremely exaggerated manner. Dr. Cerwonka believed, nonetheless, that the results were consistent with someone who suffered from a psychosis such as schizophrenia.

7

In conclusion, Dr. Cerwonka opined that claimant suffered most likely from paranoid schizophrenia, which was chronic, and of at least moderate severity. (Tr. 253). He noted that she had obtained a fair effect from her current medication regimen, but found that this disorder would not be expected to prevent her from participating in occupational rehabilitation services such as a training program. The evidence suggested that claimant's polysubstance dependence was in full, sustained remission, and that claimant was not currently abusing drugs or alcohol.

Dr. Cerwonka opined that it seemed likely that noncompliance with claimant's psychiatric treatment led to an exacerbation of her psychiatric symptoms. He observed that her subsequent substance abuse was used, in part, to alleviate those symptoms. He found that, nonetheless, this substance abuse would then lead to an exacerbation of her symptoms.

Dr. Cerwonka found that claimant's compliance with psychiatric treatment provided for the control of her symptoms, and the control of her symptoms allowed her to maintain her sobriety, both of which factors provided her with the ability and stabil ity necessary for regular work. He opined that it seemed likely that claimant would benefit from rehabilitation services. (Tr. 254). He noted that her psychiatric disorders seemed under fair control and, assuming good

motivation, claimant seemed able to participate in and benefit from rehabilitation services.

**(8) Claimant's Administrative Hearing Testimony**.  At the hearing on June 4, 2009, claimant was 36 years old.  (Tr. 26).  She testified that she was five feet tall and weighed 160 pounds.  She lived alone in an apartment.  (Tr. 27).

Claimant reported that she had completed school through the ninth grade. (Tr. 29).  She had obtained her GED.  She said that she had a driver's license and drove to appointments about four times a week.  (Tr. 30).

As to employment, claimant testified that she had last worked in April, 2009, as a part-time babysitter for a 10-year-old.  (Tr. 31-32).  She reported that she was fired after the child's grandmother heard her talking to "voices," and for screaming, hollering, inappropriate behavior, and inconsistent timing.  (Tr. 32-33). She stated that she had worked at that job for about six months.  (Tr. 34).  She also had past work experience as a food preparer, housekeeper, sweeper, and private sitter.  (Tr. 33).

Claimant testified that she had not used cocaine or alcohol since before she had gone to prison for drug possession.  (Tr. 28).  She reported that she had been clean since 2006.  (Tr. 29).  She stated that she had violated her probation by harboring a fugitive and had one year left on parole.  (Tr. 28-29).

9

Regarding complaints, claimant confirmed that she had paranoid schizophrenia, depression, and a history of substance abuse addiction. (Tr. 34). She stated that she was still hearing voices and could not sleep. (Tr. 35, 45). She testified that it was hard for her to stay focused and to remember. (Tr. 34).

Additionally, claimant did not like to be around a lot of people or loud noises. (Tr. 36, 43). She reported that she would not have problems interacting with supervisors, but would with coworkers and the general public. (Tr. 42-43). She said that she would be able to follow simple one- or two-step instructions. (Tr. 43-44).

Claimant reported that she was taking Geodon, Wellbutrin, Elavil, and Benadryl. (Tr. 35). She complained that the Benadryl caused tingling in her toe. (Tr. 36). She stated that the medications were helping her. (Tr. 41).

As to activities, claimant testified that she read books, listened to music, and did word puzzles. (Tr. 37, 40). She said that she had visitors once a month. (Tr. 37-38). She reported that she went to church three times a month. (Tr. 38). She stated that she did not need help with dressing and grooming, but did with cooking.

**(9) Administrative Hearing Testimony of William Stampley, Vocational Expert ("VE")**. Mr. Stampley classified claimant's past work as a food preparer

as light and semi-skilled; a housekeeper as light and unskilled; a companion in a nursing home as light and semi-skilled; a sitter or child monitor as medium and semi-skilled, and an industrial cleaner as medium and unskilled. (Tr. 49). The ALJ posed a hypothetical in which he asked the VE to assume a claimant age 35-36 with a GED; who had no exertional limitations; and who was limited to simple, repetitive tasks; working with things rather than people; no interaction with the public; simple, direct, and concrete supervision; only casual and incidental interaction with coworkers, no close physical proximity to coworkers; minimal changes in routine; no decision making, no fast-paced jobs. (Tr. 49-50). In response, Mr. Stampley identified the jobs of hospital cleaner, of which there were 7,039 positions statewide and 459,003 nationally; laundry bagger, of which there were 1,464 positions statewide and 225,406 nationally, and housekeeper/cleaner, of which there were 6,832 positions statewide and 445,540 nationally. (Tr. 50).

When the ALJ changed the hypothetical to assume a claimant who would not be able to maintain work activity eight hours a day, five days a week on a sustained and continuing basis, Mr. Stampley responded that no jobs would be available to such claimant. (Tr. 51).

11

**(10) The ALJ's Findings**.  Claimant argues that the ALJ erred in finding that she could maintain employment despite her diagnosis of paranoid schizophrenia.

The ALJ found that while claimant's mental problems were severe, her allegations were not fully supported by the evidence; therefore, they were not fully credible. (Tr. 19).  In reaching this determination, she noted that the evidence indicated that all of claimant's hospitalizations were drug-related; that she had been non-compliant with her medication and treatment regime, and that her mental illness had been exacerbated by drug use. (Tr. 173).  It is well established that failure to follow prescribed medical treatment precludes an award of benefits. 20 C.F.R. § 404.1530(a), (b); *Johnson v. Sullivan*, 894 F.2d 683, 685, n. 4 (5th Cir. 1990).

As for the opinion evidence, the ALJ referenced Dr. Cerwonka's opinion that claimant could understand, retain and follow instructions for simple and more complex tasks; relate to others if motivated to do so, and perform regular, full-time work.  The record supports the ALJ's determination.  Even at claimant's first visit when she was uncooperative and evasive, Dr. Cerwonka opined that claimant was likely able to understand, retain, and follow instructions, and was able to sustain enough concentration and attention to perform both simple and more

complex tasks. (Tr. 197). He also stated that claimant most likely was able to relate well enough to others on a one-to-one basis when motivated to do so. He further found that there did not seem to be any cognitive or behavioral problems that would prevent her from regular, full-time work.

At claimant's second examination, where she was cooperative, Dr. Cerwonka found that she had obtained a fair effect from her current medication regimen; however, her mental disorders would not be expected to prevent her from participating in occupational rehabilitation services such as a training program. (Tr. 253). He further opined that her psychiatric disorders seemed under fair control and, assuming good motivation, claimant seemed able to participate in and benefit from rehabilitation services. (Tr. 254). His opinion is supported by the records from claimant's treating physicians at the Tyler Mental Health Center, who determined that claimant was fairly stable on her current medications. (Tr. 235).

If an impairment reasonably can be remedied or controlled by medication, treatment or therapy, it cannot serve as a basis for a finding of disability. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). Here, the record supports the ALJ's finding that since claimant had stopped abusing drugs, her condition was controllable with medication. (Tr.

13

253). Additionally, the reports from Dr. Cerwonka buttress the ALJ's conclusion that claimant could return to full-time work. Further, the evidence shows that claimant had returned to work in 2009 as a CNA while she suffered from paranoid schizophrenia. *See Fraga v. Bowen*, 810 F.2d 1296, 1305 n. 11 (5th Cir. 1987) (claimant's ability to work with hypertension prior to application date precluded finding of disability). Accordingly, the undersigned finds that the ALJ's determination is supported by substantial evidence.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND**

**RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed December 3, 2012, at Lafayette, Louisiana.

*[signature]*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE